# IN THE SUPREME COURT OF TEXAS

═══════════

No. 19-0656

═══════════

═════════════════

IN RE TEXAS-NEW MEXICO POWER COMPANY, RELATOR

═════════════════

═════════════════

ON PETITION FOR WRIT OF MANDAMUS

═════════════════

**Argued October 8, 2020**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

Section 32.001(a) of the Public Utility Regulatory Act (PURA) grants the Public Utility Commission (PUC) "exclusive original jurisdiction over the rates, operations, and services of an electric utility".[1] In *Oncor Electric Delivery Co. v. Chaparral Energy, LLC*, we held that the PUC's exclusive jurisdiction extends to "issues underlying a customer's claim that a PUC-regulated utility breached a contract by failing to timely provide electricity services."[2] The issue now before us in this original proceeding and another decided today—*In re Oncor Electric Delivery Co.*[3]—is whether the PUC's exclusive original jurisdiction extends to issues underlying a tort claim. In this case, we conclude that the negligence claim asserted against the electric utility does not involve its rates, operations, and services. Accordingly, we deny the petition for writ of mandamus.

─────────────────

[1] TEX. UTIL. CODE § 32.001(a).

[2] 546 S.W.3d 133, 136 (Tex. 2018).

[3] ___ S.W.3d ___ (Tex. June 25, 2021) (No. 19-0662).

A large number of homeowners[4] near the Junemann Bayou in La Marque, Texas[5] sued their electric utility, relator Texas-New Mexico Power Co. (TNM), for damages due to flooding during Hurricane Harvey.[6] Before the storm hit, TNM was beginning construction of a new substation adjacent to the Bayou. Its contractor had laid large wooden mats on the ground to form a runway over which to move heavy equipment. As Harvey barreled towards Houston, the contractor abandoned the project and left the mats unsecured. Plaintiffs allege that the storm pushed the mats into the Bayou, where they became lodged against its drainage ports, causing the Bayou to overflow and flood the surrounding neighborhood, including Plaintiffs' homes. Plaintiffs assert that TNM was negligent in not requiring its contractor to secure the mats. The trial court denied TNM's motion to dismiss the case for lack of subject-matter jurisdiction,[7] and TNM petitioned for mandamus relief. The court of appeals denied the petition without addressing its merits.[8] We set TNM's mandamus petition for oral argument along with the petition in *Oncor*.

As noted at the outset, PURA Section 32.001(a) grants the PUC "exclusive original jurisdiction over the rates, operations, and services of an electric utility" within its jurisdiction,[9] such as TNM. We last addressed the scope of the PUC's exclusive original jurisdiction in

---

[4] Plaintiffs (the real parties in interest here) are too many to list.

[5] La Marque is between Houston and Galveston.

[6] Harvey occurred in September 2017.

[7] Plaintiffs pleaded claims for negligence, strict liability under Section 11.086 of the Texas Water Code, and nuisance.

[8] 579 S.W.3d 784 (Tex. App.—Houston [1st Dist.] 2019, orig. proceeding) (per curiam).

[9] TEX. UTIL. CODE § 32.001(a).

2

*Chaparral*.[10] Chaparral sued Oncor Electric Delivery Company for breach of a service agreement under which Oncor was to provide electricity to wells drilled by Chaparral in West Texas.[11] After the trial court rendered judgment for Chaparral, Oncor argued on appeal that Chaparral should have brought its claim before the PUC first.[12] We agreed.[13]

After laying out the general principles that govern an exclusive-jurisdiction inquiry[14] and examining PURA's key provisions, we held that "[i]n light of section 32.001(a)'s express language and the comprehensive regulatory scheme PURA creates, . . . PURA grants the PUC exclusive jurisdiction over all matters involving an electric utility's rates, operations, and services."[15] The issue was "whether Chaparral's claim [fell] within that jurisdictional scope."[16]

---

[10] 546 S.W.3d 133 (Tex. 2018).

[11] *Id.* at 136–137.

[12] *See id.* at 137.

[13] *Id.* at 141.

[14] "A state agency 'has exclusive jurisdiction when the Legislature has granted that agency the sole authority to make an initial determination in a dispute.'" *Id.* at 138 (quoting *In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004)). "When an agency has exclusive jurisdiction, courts lack jurisdiction until a party has exhausted all administrative remedies before the agency." *Id.* (citing *Entergy*, 142 S.W.3d at 321–322). Therefore, the issue of exclusive agency jurisdiction "cannot be waived" and "may [be] raise[d] . . . for the first time on appeal." *Id.* (citing *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 103 (Tex. 2012)).

We will conclude that the Legislature has given an agency exclusive jurisdiction over a matter when the statute either (1) contains express language to that effect; or (2) creates "a pervasive regulatory scheme indicat[ing] that the Legislature intended for the regulatory process to be the exclusive means of remedying the problem" at hand. *Id.* (quoting *In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 624–625 (Tex. 2007)). Of course, "[i]n deciding whether a 'pervasive regulatory scheme' exists, the statutory language is determinative." *Id.* (citing *Entergy*, 142 S.W.3d at 322–323).

[15] *Id.* at 141. We reasoned that PURA Sections 11.002, 11.008, 14.001, and 31.001(a) indicated the Legislature's creation of a pervasive regulatory scheme. *See id.* at 138.

[16] *Id.* at 139.

3

PURA defines *service* as having "its broadest and most inclusive meaning", "includ[ing] any act performed, anything supplied, and any facilities used or supplied by a public utility in the performance of the utility's duties under this title to its patrons . . . and the public."[17] PURA does not define *operations*, but we may assume that an equally broad meaning is intended. Chaparral's claim that Oncor breached a contract to provide electricity, we concluded, was a complaint about Oncor's services.[18]

By contrast, Plaintiffs' complaints in this case—that TNM left the mats adjacent to the Bayou, unsecured, prior to Harvey's arrival—are not about TNM's operations and services as a utility. Although the negligence Plaintiffs allege occurred in the context of construction on utility facilities, that context is merely a coincidence. The mats could have been used on any kind of construction project and left unsecured by any kind of contractor. As TNM conceded at oral argument, a claim alleging that one of its drivers caused a car accident would not involve its rates, operations, or services and, therefore, would not fall within the PUC's exclusive jurisdiction. We see no distinction between that situation and the one here.

TNM argues that two standard limitation-of-liability provisions in its tariff require Plaintiffs to proceed first in the PUC. One states that TNM "will not be liable for any damages . . . occasioned by the failure to provide timely or suitable Construction Service." The other is a force majeure clause excusing TNM from liability "for any act or event that is beyond [its] control and which could not be reasonably anticipated and prevented through the use of

---

[17] TEX. UTIL. CODE § 11.003(19).

[18] *See Chaparral*, 546 S.W.3d at 139–140.

reasonable measures". Neither limitation of liability, if applicable, would transform Plaintiffs' complaint into one about TNM's operations or services as a utility.

\* \* \* \* \*

Plaintiffs' claim is not one within the PUC's exclusive original jurisdiction because it is not about TNM's operations and services as a utility.[19] TNM's petition for writ of mandamus is denied.

Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** June 25, 2021

---

[19] *See* TEX. UTIL. CODE §§ 11.003(19), 32.001(a).