No. 15-24-00118-CV

ACCEPTED
15-24-00118-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
3/27/2025 4:13 PM
~~CHRISTOPHER A~~. PRINE
CLERK

## COURT OF APPEALS FOR THE
## FIFTEENTH DISTRICT OF TEXAS
## AUSTIN, TEXAS

RECEIVED IN
15th COURT OF APPEALS
AUSTIN, TEXAS

3/27/2025 4:13:55 PM

CHRISTOPHER A. PRINE
Clerk

ASPIRE POWER VENTURES, LP,

*Appellant*,

v.

PUBLIC UTILITY COMMISSION OF TEXAS, ELECTRIC RELIABILITY COUNCIL OF TEXAS, THOMAS GLEESON, LORI COBOS, JIMMY GLOTFELTY, KATHLEEN JACKSON, AND COURTNEY HJALTMAN,

*Appellees*.

On Appeal from the 345th Judicial District Court
Travis County, Texas
Cause No. D-1-GN-24-003384
Hon. Catherine A. Mauzy, Presiding

## BRIEF OF AMICUS CURIAE CALPINE CORPORATION

Patrick Leahy
State Bar No. 24092674
BAKER BOTTS L.L.P.
401 South 1st Street, Suite 1300
Austin, Texas 78704
(512) 322-2500
(512) 322-2501 (Facsimile)
patrick.leahy@bakerbotts.com

Macey Reasoner Stokes
State Bar No. 00788253
George Fibbe
State Bar No. 24036559
J. Mark Little
State Bar No. 24078869
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, Texas 77002
(713) 229-1234
(713) 229-1522 (Facsimile)
macey.stokes@bakerbotts.com
george.fibbe@bakerbotts.com
mark.little@bakerbotts.com

COUNSEL FOR AMICUS CURIAE CALPINE CORPORATION

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ ii

Interest of Amicus Curiae ........................................................................................1

Argument...................................................................................................................1

    I.    Aspire's procedural and substantive attacks on ERCOT Contingency Reserve Service are without merit...................................1

        A.    ERCOT validly promulgated the ECRS Rules through its Nodal Protocol Revision Process..................................................2

        B.    ECRS is a valid reliability tool that is consistent with PURA. ..........................................................................................5

    II.    Aspire might try to use this case to obtain retroactive resettlement of ECRS transactions, to the detriment of the ERCOT market....................................................................................7

Prayer .......................................................................................................................9

Certificate of Compliance .......................................................................................11

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*CPS Energy v. Elec. Reliability Council of Tex.*,
671 S.W.3d 605 (Tex. 2023) ....................................................................3, 4

*Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*,
546 S.W.3d 133 (Tex. 2018) .......................................................................4

*Pub. Util. Comm'n v. Constellation Energy Commodities Grp., Inc.*,
351 S.W.3d 588 (Tex. App.—Austin 2011, pet. denied) ....................................4

*Pub. Util. Comm'n of Tex. v. Luminant Energy Company*,
691 S.W.3d 448 (Tex. 2024) ....................................................................5, 6

*Pub. Util. Comm'n of Tex. v. RWE Renewables*,
691 S.W.3d 484 (Tex. 2024) ............................................................2, 3, 4, 6, 7

*Sanchez v. Huntsville Indep. Sch. Dist.*,
844 S.W.2d 286 (Tex. App.—Houston [1st Dist.] 1992, no writ) .......................3

STATUTES

TEX. GOV'T CODE § 2001.001.....................................................................2

TEX. GOV'T CODE § 2001.003(7).................................................................3

TEX. UTIL. CODE § 39.151(a)(2) .................................................................5

RULES AND PROTOCOLS

16 TEX. ADMIN. CODE § 25.509..................................................................7

ERCOT Protocol § 4.4.11 ..........................................................................7

ERCOT Protocol § 6.5.7.3..........................................................................7

TEX. R. APP. P. 11 ...................................................................................1

**OTHER AUTHORITIES**

ERCOT, *ERCOT Organization Backgrounder*,
https://www.ercot.com/news/mediakit/backgrounder ........................................3

ERCOT, *Fact Sheet*,
https://www.ercot.com/files/docs/2022/02/08/ERCOT_Fact_Sheet.pdf (March
2025) ...............................................................................................................3

**INTEREST OF AMICUS CURIAE**

This brief is filed by Calpine Corporation ("Calpine") as amicus curiae[1] to present an additional market-participant perspective to assist the Court. Calpine, through its subsidiaries, is one of the nation's largest generators of electricity from natural gas and geothermal resources, with robust commercial, industrial, and residential retail operations in key competitive power markets. It is based in Houston and has extensive operations in Texas and the Electric Reliability Council of Texas ("ERCOT") market. As a substantial participant in the ERCOT market, Calpine is interested in the market's predictable and efficient functioning. Calpine operates its business in reliance on ERCOT Protocols and would be significantly harmed if these Protocols were invalidated, many more Protocols were placed in legal jeopardy, and other market participants could retroactively resettle completed transactions such as these.

**ARGUMENT**

**I.    Aspire's procedural and substantive attacks on ERCOT Contingency Reserve Service are without merit.**

On the merits, Aspire assaults the ERCOT Contingency Reserve Service ("ECRS") on both procedural and substantive grounds. If successful, those

---

[1] Calpine Corporation paid all fees for the preparation of this amicus curiae brief. *See* TEX. R. APP. P. 11.

arguments would take down not only ECRS, but virtually all of ERCOT's Protocols.

Fortunately, however, none of Aspire's aggressive attacks has merit.

## A. ERCOT validly promulgated the ECRS Rules through its Nodal Protocol Revision Process.

Procedurally, Aspire argues that ERCOT violated the Administrative Procedure Act ("APA") by adopting the ECRS Rules. Aspire Br. 58-59. But that argument fails because the APA does not govern the ERCOT Protocol process. Rather, as with all its Protocols, ERCOT adopted the ECRS Rules using a non-APA process endorsed by the Texas Supreme Court in *Public Utility Commission of Texas v. RWE Renewables*, 691 S.W.3d 484 (Tex. 2024):

> While the PUC has broad administrative responsibilities, it simultaneously lacks 'the expertise and staff resources' to make informed regulatory decisions independent of ERCOT.... The legislative and regulatory schemes have in turn envisioned separate, complementary purposes of and procedures for PUC rules and ERCOT protocols.

*Id.* at 490-91 (internal citations omitted). Thus, ERCOT's authority to govern the market through its Protocol process is not simply derived from the PUC's authority but is an essential feature of the regulatory structure established by the Legislature. Aspire is very familiar with *RWE*'s controlling precedent since Aspire was an amicus curiae supporting the opposite result in that case.[2]

---

[2] The APA does not apply for an additional reason: ERCOT is not a "state agency." The APA's requirements apply only to a "state agency," TEX. GOV'T CODE § 2001.001, defined as "a state

2

The *RWE* Court explained that "PURA envisions a separate process for ERCOT-adopted protocols" in lieu of the APA pathway for rulemaking. *Id.* at 486. Specifically, ERCOT uses the Nodal Protocol Revision Request ("NPRR") process because the Legislature "statutorily authorized [ERCOT] to establish, adopt, and enforce a variety of policies, rules, guidelines, standards, procedures, protocols, and other requirements to govern the operations of [electric] market participants." *CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605, 626 (Tex. 2023).

There is no shortage of process in the NPRR process. It is a "painstaking procedure" that "serves to leverage the expertise of ERCOT members and industry stakeholders while maintaining transparency and affording interested parties plentiful opportunities to weigh in." *RWE*, 691 S.W.3d at 490. "A market participant, among others, may appeal a decision of the ERCOT board regarding an

officer, board, commission, or department *with statewide jurisdiction* that makes rules or determines contested cases." *Id.* § 2001.003(7) (emphasis added). ERCOT does not have statewide jurisdiction. It has regulatory authority over a large portion of Texas, but not all of it: El Paso, portions of the Panhandle (including Amarillo), and portions of East Texas (including Beaumont) lie outside ERCOT's jurisdiction. *See CPS Energy v. Elec. Reliability Council of Tex.,* 671 S.W.3d 605, 611 (Tex. 2023) ("Most of the state comprises the U.S. mainland's only *intra*state electrical grid, which covers 75 percent of the state's acreage, carries about 90 percent of its electrical load, and includes more than 52,700 miles of transmission lines, 1,100 generation units, and 26 million electricity customers.") (footnote omitted); ERCOT, *ERCOT Organization Backgrounder*, https://www.ercot.com/news/mediakit/backgrounder (last visited March 27, 2025); ERCOT, *Fact Sheet*, https://www.ercot.com/files/docs/2022/02/08/ERCOT_Fact_Sheet.pdf (March 2025). Governmental entities that lack statewide jurisdiction are not subject to the APA. *See, e.g.*, *Sanchez v. Huntsville Indep. Sch. Dist.*, 844 S.W.2d 286, 289 (Tex. App.—Houston [1st Dist.] 1992, no writ) ("School districts are not covered by the provisions of the Administrative Procedure and Texas Register Act because they are not 'agencies' as defined by the statute.") (construing substantially similar predecessor version of APA) (internal citation omitted).

3

NPRR to the PUC," and "if the complainant is dissatisfied with the result of the PUC proceedings, it can then seek judicial review." *Id.* Indeed, the Texas Supreme Court has held that the Legislature granted the PUC *exclusive* jurisdiction over claims regarding ERCOT's actions. *CPS Energy*, 671 S.W.3d at 617. The Court reasoned that PURA created a "'pervasive regulatory scheme' that impliedly 'indicate[d] that the Legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed.'" *Id.* (quoting *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018)). Aspire made the deliberate choice not to take advantage of these procedural rights.

Importantly, Aspire's procedural challenge to the ECRS Rules, if successful, would imperil <u>all</u> other ERCOT Protocols as well, because they too were promulgated without APA rulemaking. That result would throw the entire ERCOT market into disarray, as the ERCOT Protocols are the highly technical, highly comprehensive bedrock of the ERCOT system. *See RWE*, 691 S.W.3d at 486 ("The 'Nodal Protocols' developed and implemented by ERCOT 'provide the framework for the administration of the Texas electricity market.'" (quoting *Pub. Util. Comm'n v. Constellation Energy Commodities Grp., Inc.*, 351 S.W.3d 588, 594–95 (Tex. App.—Austin 2011, pet. denied))). It is difficult to overstate the chaos that would follow in the wake of such a ruling. Fortunately, however, the Court can avoid all those ills by confirming what the Texas Supreme Court has already held—that

4

ERCOT Protocols do not require APA rulemaking and can instead be promulgated via the NPRR process.

## B. ECRS is a valid reliability tool that is consistent with PURA.

Substantively, Aspire claims that ECRS is inconsistent with the Public Utility Regulatory Act ("PURA") because it limits competition and manipulates the market. Aspire Br. 62-64. But the Texas Supreme Court rejected virtually the same argument just last year in *Public Utility Commission of Texas v. Luminant Energy Company*, 691 S.W.3d 448 (Tex. 2024). There, the claim was that emergency pricing orders issued by the PUC during Winter Storm Uri to preserve the reliability of the ERCOT grid unlawfully restricted the competitive pricing of power, in contravention of PURA. *Id.* at 461. The *Luminant* Court disagreed, explaining that ERCOT is statutorily charged with "ensuring the adequacy of reliability of the electric grid." *Id.* at 454; *see also* TEX. UTIL. CODE § 39.151(a)(2) (directing Independent System Operator (ERCOT) to "ensure the reliability and adequacy of the regional electrical network"); *id.* § 39.151(d) ("The commission shall adopt and enforce rules relating to the reliability of the regional electrical network . . . or may delegate those responsibilities to an independent organization."). Accordingly, PURA "acknowledges that the goal of prices set by competition may, in some circumstances, have to yield" to the fundamental goal of grid reliability. *Luminant*,

691 S.W.3d at 463. "Deciding when those circumstances are present—and how to respond—is the Commission's job, not the judiciary's." *Id.*

Aspire cannot maintain its claims in the face of *Luminant*'s clear and on-point holding. As detailed in ERCOT's brief, ECRS, like the orders at issue in *Luminant*, is an important tool for ensuring grid reliability. *See* ERCOT Br. 54-56. Aspire may disagree with the ECRS program as a matter of policy or regret the financial losses it has incurred as a result, but neither makes ECRS somehow inconsistent with PURA—which, after all, explicitly charges the PUC with ensuring the reliability of the grid.

As with its procedural challenge, Aspire's substantive challenge comes with vast harmful implications for the ERCOT market. ECRS is hardly the only program that touches on or even intrudes on unfettered competition for the sake of reliability. There are a whole host of programs under which ERCOT limits or adjusts prices, as authorized by the PUC, in order to ensure reliability or otherwise fulfill its mandate. *See RWE*, 691 S.W.3d at 487 (stating that "ERCOT is uniquely positioned to manage the electricity market by virtue of its technical expertise, and ERCOT utilizes a variety of resources and systems to manage grid conditions," including price-related mechanisms such as scarcity pricing (citing *Luminant*, 691 S.W.3d at 454)). For example, ERCOT imposes price adders on top of the market-clearing price of power during periods of energy scarcity, in order to encourage additional generation

resources to enter the market and provide much-needed power. *See, e.g.*, ERCOT

Protocol 6.5.7.3. And when demand for power is so high and available generation

so low that load must be shed—meaning customers' power is turned off—the

ERCOT Protocols automatically raise the price to the regulatory price cap. *Id.*; 16

TEX. ADMIN. CODE § 25.509. The PUC and ERCOT have adopted system-wide

offer caps, which currently limit the price of power during most periods to $5,000

per megawatt-hour. ERCOT Protocol 4.4.11. None of these provisions—or the

multitude of other similar intrusions on competition for the sake of reliability—

would be permitted if ERCOT were prohibited from regulating competition in

service to reliability goals. That untenable result further refutes Aspire's arguments.

## II.     Aspire might try to use this case to obtain retroactive resettlement of ECRS transactions, to the detriment of the ERCOT market.

This case appears to be the first step in Aspire's attempt to seek retroactive

resettlement of ECRS transactions and recover from the rest of the market the

substantial sums it lost therein. Aspire lost money because it did not effectively

adapt its hedging and trading practices to account for the new ECRS program. In its

Second Amended Petition, Aspire claimed that the ECRS rules made it "impossible

for independent QSEs [Qualified Scheduling Entities] like Aspire to efficiently

manage the risks that are inherent in fixed-price bilateral contracts." App'x 281.

Aspire went to on to protest that it "cannot predict the abrupt addition and removal

of generation under ECRS," which "makes it much harder" for Aspire "to offer

7

fixed-price hedges to retail providers" and "substantially increases the price for these hedges." *Id.* In other words, the ECRS Rules disrupted Aspire's business model, and Aspire's inability to adapt to the new regulatory environment caused it to suffer significant losses.

Aspire has represented that it is not seeking any monetary relief here, but it might attempt to use a favorable ruling in this litigation to do just that. It has carefully left open the door to recovering "damages or other monetary relief because of the harms it suffered because of ECRS," *id.* at 293, and pointedly "disagree[d] with the PUC's position that prior transactions cannot be unwound," *id.* at 272. If Aspire succeeds in invalidating the ECRS rules, it could attempt to parlay that ruling into an unwinding of settled ECRS transactions on which it lost money. Specifically, Aspire might use any such declaratory judgment as the basis for an administrative challenge before the PUC, arguing that because the ECRS rules were invalidly adopted, the transactions made pursuant to the ECRS program were unlawful and must be reversed.

That ultimate aim—the unwinding of completed ECRS transactions—might benefit Aspire, but only at the unacceptably high cost of upsetting other market participants' settled expectations and undermining trust in both the ECRS program and the ERCOT system as a whole. When undertaking ECRS transactions, market participants often engage in related conduct, such as hedging, that lies beyond the

jurisdiction of the PUC. Because the PUC cannot unwind those aspects of completed ECRS transactions, the unwinding that Aspire seeks would concern only a partial, distorted piece of the greater whole. That would merely shift money from those, like Calpine, who were able to better adapt to the ECRS rules to those, like Aspire, who were not. And even more importantly, it would signal to all market participants and potential investors that there is no certainty or stability in ERCOT market transactions—which is exactly the wrong message to send when the State is seeking to attract new investment in the grid. That path is both legally unsound and prudentially unwise.

## PRAYER

Calpine respectfully requests the Court to affirm the district court's judgment.

Dated:  March 27, 2025                    Respectfully submitted,


                                          BAKER BOTTS L.L.P.

                                          By: */s/ Macey Reasoner Stokes*
                                              Macey Reasoner Stokes
                                              State Bar No. 00788253
                                              George Fibbe
                                              State Bar No. 24036559
                                              J. Mark Little
                                              State Bar No. 24078869
                                              910 Louisiana Street
                                              Houston, Texas 77002
                                              (713) 229-1234
                                              (713) 229-1522 (Facsimile)
                                              macey.stokes@bakerbotts.com
                                              george.fibbe@bakerbotts.com
                                              mark.little@bakerbotts.com

                                              Patrick Leahy
                                              State Bar No. 24092674
                                              401 South 1st Street, Suite 1300
                                              Austin, Texas 78704
                                              (512) 322-2500
                                              (512) 322-2501 (Facsimile)
                                              patrick.leahy@bakerbotts.com


COUNSEL FOR AMICUS CURIAE CALPINE CORPORATION

10

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9.4(i), I certify that, according to the word count of the computer program used to prepare this brief, the document contains 2,110 words.

*/s/ Macey Reasoner Stokes*
Macey Reasoner Stokes

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Janet Guillory on behalf of Macey Stokes
Bar No. 788253
janet.guillory@bakerbotts.com
Envelope ID: 98985631
Filing Code Description: Other Brief
Filing Description: Brief of Amicus Curiae Calpine Corporation
Status as of 3/27/2025 4:22 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David Laurent | | david.laurent@oag.texas.gov | 3/27/2025 4:13:55 PM | SENT |
| Laura Courtney | | laura.courtney@oag.texas.gov | 3/27/2025 4:13:55 PM | SENT |
| James ScottMcCarley | | scott.mccarley@oag.texas.gov | 3/27/2025 4:13:55 PM | SENT |
| Macey Stokes | | macey.stokes@bakerbotts.com | 3/27/2025 4:13:55 PM | SENT |
| George Fibbe | | george.fibbe@bakerbotts.com | 3/27/2025 4:13:55 PM | SENT |
| Mark Little | | mark.little@bakerbotts.com | 3/27/2025 4:13:55 PM | SENT |
| Patrick Leahy | | patrick.leahy@bakerbotts.com | 3/27/2025 4:13:55 PM | SENT |

Associated Case Party: Aspire Power Ventures, LP

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Chrysta L.Castaneda | | chrysta@castaneda-firm.com | 3/27/2025 4:13:55 PM | SENT |
| Nicole Michael | | nicole@castaneda-firm.com | 3/27/2025 4:13:55 PM | SENT |
| Brent M.Rubin | | brubin@ccsb.com | 3/27/2025 4:13:55 PM | SENT |
| Ken Carroll | | kcarroll@ccsb.com | 3/27/2025 4:13:55 PM | SENT |
| Monica Latin | | mlatin@ccsb.com | 3/27/2025 4:13:55 PM | SENT |

Associated Case Party: Electric Reliability Council of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Elliot Clark | | eclark@winstead.com | 3/27/2025 4:13:55 PM | SENT |
| Elliot Clark | | eclark@winstead.com | 3/27/2025 4:13:55 PM | SENT |
| Elin Isenhower | | eisenhower@winstead.com | 3/27/2025 4:13:55 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Janet Guillory on behalf of Macey Stokes
Bar No. 788253
janet.guillory@bakerbotts.com
Envelope ID: 98985631
Filing Code Description: Other Brief
Filing Description: Brief of Amicus Curiae Calpine Corporation
Status as of 3/27/2025 4:22 PM CST

Associated Case Party: Electric Reliability Council of Texas

| | | | | |
|---|---|---|---|---|
| Elin Isenhower | | eisenhower@winstead.com | 3/27/2025 4:13:55 PM | SENT |
| Elin Isenhower | | eisenhower@winstead.com | 3/27/2025 4:13:55 PM | SENT |

Associated Case Party: Public Utility Commission of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| John Hulme | | John.Hulme@oag.texas.gov | 3/27/2025 4:13:55 PM | SENT |
| Amanda AtkinsonCagle | | Amanda.Cagle@oag.texas.gov | 3/27/2025 4:13:55 PM | SENT |
| Jordan Pratt | | Jordan.Pratt@oag.texas.gov | 3/27/2025 4:13:55 PM | SENT |