

# NUMBER 13-23-00020-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MCALLEN PUBLIC UTILITY,                              **Appellant,**

v.

OTHAL E. BRAND, JR. IN HIS OFFICIAL CAPACITY
AS BOARD PRESIDENT, CHRIS BURNS IN HIS
OFFICIAL CAPACITY AS VICE PRESIDENT, MARK
FREELAND IN HIS OFFICIAL CAPACITY AS
SECRETARY, W.D. MOSCHEL IN HIS OFFICIAL
CAPACITY AS MEMBER, AND LANCE NEUHAUS IN
HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD
OF DIRECTORS OF HIDALGO COUNTY WATER
IMPROVEMENT DISTRICT NO. 3                   **Appellees.**

## ON APPEAL FROM THE 398TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña**
**Memorandum Opinion by Justice Longoria**

Appellant McAllen Public Utility (MPU) challenges the trial court's granting of a plea to the jurisdiction in favor of appellees Othal E. Brand, Jr. in his official capacity as Board President, Chris Burns in his official capacity as Vice President, Mark Freeland in his official capacity as Secretary, W.D. Moschel in his official capacity as Member, and Lance Neuhaus in his official capacity as Member of the Board of Directors of Hidalgo County Water Improvement District No.3 (HCWID 3). MPU argues that the trial court erred in granting the plea to the jurisdiction because it has jurisdiction over MPU's claims against appellees for *ultra vires* actions "which contravene clear legislative mandates and directly, adversely affect [MPU]." We affirm.

## I. BACKGROUND

MPU, a municipally owned utility created to supply retail water and wastewater utility service to citizens of McAllen, Texas, and surrounding areas, owns and operates two drinking water treatment plants, two wastewater treatment plants, several ground and elevated storage tanks, and "hundreds of miles of water transmission, distribution, and wastewater collection lines." MPU obtains the raw water needed for its supply system through four water districts, including HCWID 3. Appellees make up the Board of Directors of HCWID 3.

According to MPU's live petition,[1] HCWID 3 has permits which authorize it to divert raw water from the Rio Grande on behalf of MPU, its only municipal customer. MPU asserted is entitled to "13,980 acre-feet of water" pursuant to these permits. According to MPU's petition:

> Under relevant Texas Water Code statutes, [HCWID 3] effectively has two
> available mechanisms to establish a price for water supplied to MPU under

---

[1] The live pleading is MPU's second amended petition.

the Permits. One is that [HCWID 3] and MPU may contract for the water supply, and the price and terms of such contract shall be just and reasonable and without discrimination. Separately, because MPU's original entitlement to the water stems from the [Texas Commission on Environmental Quality (TCEQ)]-administered water rights themselves, [HCWID 3] may also establish a price pursuant to its authority as owner of the Permits. Section 11.041 of the Water Code establishes a complaint process that acknowledges that a person entitled to receive water may complain to the TCEQ that the price or rental demanded for the available water is not reasonable and just or is discriminatory.

MPU alleged that "since 2012, HCWID 3 has raised MPU's delivery charge by 70.6 percent." MPU asserted that HCWID 3 did not raise its other customers' rates in the same manner. MPU argued that HCWID 3's delivery charge rate is "not just and reasonable."

Prior to filing the underlying suit, MPU initiated an administrative proceeding with the Public Utility Commission of Texas (PUC) appealing the water rate charged by HCWID 3. In that proceeding, MPU invoked § 12.013 of the Texas Water Code, which states that the PUC "shall fix reasonable rates for the furnishing of raw or treated water for any purpose mentioned in Chapter 11 or 12 of this code." TEX. WATER CODE ANN. § 12.013(a). MPU requested that the PUC fix a reasonable rate and order refunds of the difference between "the rate actually charged and the rate fixed by the [PUC]." The challenge was submitted to the State Office of Administrative Hearings (SOAH), where MPU disputed whether the rate was "charged pursuant to a written contract." See 16 TEX. ADMIN. CODE § 24.307(b) ("For a petition or appeal to review a rate that is charged pursuant to a written contract, [PUC] will forward the petition or appeal to [SOAH] to conduct an evidentiary hearing on public interest."), (c) ("For a petition or appeal to review a rate that is not charged pursuant to a written contract, [PUC] will forward the petition or appeal to [SOAH] to conduct an evidentiary hearing on the rate."). The SOAH abated its proceedings for a court to determine whether the rate was charged pursuant to a written

3

contract. *See id.* § 24.307(d) ("If the seller and buyer do not agree that the protested rate is charged pursuant to a written contract, the administrative law judge shall abate the proceedings until the contract dispute over whether the protested rate is part of the contract has been resolved by a court of proper jurisdiction."). MPU appealed the abatement and subsequently filed a complaint regarding the charged rate with the TCEQ, stating that the PUC lacked jurisdiction. The PUC then asked the Attorney General to determine jurisdiction of the complaint. The Attorney General stated that the PUC generally has jurisdiction, but the TCEQ has jurisdiction in certain narrow exceptions, but did not offer an opinion as to jurisdiction in this matter. MPU then proceeded with its request for the PUC to determine whether abatement by the SOAH was proper.

While still pending a determination from the PUC, MPU filed its petition in the district court. MPU's original petition brought a claim for breach of contract against HCWID 3, seeking specific performance of the contract "by charging MPU the last legal and valid contract rate." HCWID 3 filed its first plea to the jurisdiction asserting that the PUC had exclusive jurisdiction over the rate challenge and that HCWID 3 had governmental immunity. MPU amended its petition, abandoning all its claims against HCWID 3, and instead naming Brand in his official capacity as President of HCWID 3 as the defendant, and amending its cause of action to an *ultra vires* claim, seeking declaratory judgment and a permanent injunction. A second plea to the jurisdiction was filed, arguing (1) that Brand, alone, was not the proper defendant in an *ultra vires* claim, but rather all members of the Board were the proper defendants; (2) the *ultra vires* claim fails because § 11.036 "is facially inapplicable"; and (3) the PUC has exclusive jurisdiction.

MPU filed its second amended petition, the live pleading, adding all Board members as defendants in an *ultra vires* cause of action seeking declaratory judgment. Specifically, MPU sought declarations that: (1) the adjustments to the delivery charges for MPU that were not on the "same percentage basis" as the adjustments to HCWID 3's other customers "constitute 'rates' or 'charges' that are not charges pursuant to the Contract"; (2) appellees "acted outside of their powers and authorities in approving and implementing adjustments to [MPU's] delivery charge because such adjustments are in violation of the just and reasonable price terms established" under the Texas Water Code; (3) the delivery charges that were not on the same percentage basis as HCWID 3's other customers "are void because they were established in violation of Texas Water Code [§] 11.036"; and (4) appellees, "in their respective official capacities" have violated the "statutory requirements enacted by the Texas Legislature in 2021 through Senate Bill 2185."

Appellees filed a response to the second amended petition, supporting their second plea to the jurisdiction. In their response, appellees acknowledged that the proper parties were now the defendants in the *ultra vires* action but maintained that the trial court still lacked jurisdiction over the matter. After hearing argument, the trial court granted the plea to the jurisdiction. This appeal followed.

## II.    PLEA TO THE JURISDICTION

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife*

*v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Subject matter jurisdiction is a question of law; therefore, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.*

A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). A plea to the jurisdiction may challenge either the sufficiency of jurisdictional allegations in the pleadings or the existence of jurisdictional facts. *Miranda*, 133 S.W.3d at 226–27; *see Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022). When a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015); *Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Ryder*, 453 S.W.3d at 927. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id*. at 227.

## A. Exclusive Jurisdiction Over Rate Challenge

Appellees argued in their plea to the jurisdiction that the trial court lacked jurisdiction over MPU's substantive rate challenge because either the PUC or the TCEQ has exclusive jurisdiction.

> A state agency "has exclusive jurisdiction when the Legislature has granted that agency the sole authority to make an initial determination in a dispute." *In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004). When an agency has exclusive jurisdiction, courts lack jurisdiction until the party has

6

exhausted all administrative remedies before the agency. *Id.* at 321–22. Because a challenge to the court's subject-matter jurisdiction cannot be waived, a party may raise exclusive jurisdiction for the first time on appeal. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 103 (Tex. 2012).

We begin with the presumption that district courts are constitutionally authorized to resolve legal disputes. *Entergy*, 142 S.W.3d at 322; *see* TEX. CONST. art. V, § 8. To overcome that presumption, the Constitution or another law must grant exclusive jurisdiction to another court or an administrative agency. *In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 624–25 (Tex. 2007); *Entergy*, 142 S.W.3d at 322. Unlike courts, an administrative agency is "a legislative creation with only those powers expressly conferred and necessary to accomplish its duties." *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 216 (Tex. 2002). Whether an agency has exclusive jurisdiction presents a question of statutory interpretation we review de novo. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex. 2002).

A statute grants an agency exclusive jurisdiction when its "language clearly expresses the Legislature's intent for the [agency] to have exclusive jurisdiction over matters the [statute] governs." *David McDavid Nissan*, 84 S.W.3d at 223. Absent such an explicit grant, an agency may also have exclusive jurisdiction "when a pervasive regulatory scheme indicates that the Legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *In re Sw. Bell Tel.*, 235 S.W.3d at 624–25 (citing *David McDavid Nissan*, 84 S.W.3d at 221). In deciding whether a "pervasive regulatory scheme" exists, the statutory language is determinative. *Entergy*, 142 S.W.3d at 322–23.

*Oncor Elec. Delivery Co. LLC v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018).

Appellees contend that the trial court lacks jurisdiction over the rate challenge. MPU concedes that the PUC "has jurisdiction over water supply rates under [§§] 12.013 and 13.042(f) of the water code," but argues that the jurisdiction is "appellate only in nature and is *not* exclusive" (Emphasis in original). MPU bases this assertion on the Texas Administrative Code, which states:

> If the seller and buyer do not agree that the protested rate is charged pursuant to a written contract, the administrative law judge shall abate the proceedings until the contract dispute over whether the protested rate is part of the contract has been resolved by a court of proper jurisdiction.

7

16 TEX. ADMIN. CODE § 24.307(d).

While MPU is seeking a determination as to whether the rates were "charged pursuant to a contract," MPU also requested that the trial court declare the rates void as "they were established in violation of Texas Water Code [§] 11.036." Section 12.013 grants the PUC the exclusive authority to determine the rates under Chapters 11 and 12 of the Water Code. TEX. WATER CODE ANN. § 12.013 (stating that the PUC "*shall* fix reasonable rates for the furnishing of raw or treated water for any purpose mentioned in Chapter 11 or 12 of this code" (emphasis added)). As such, to the extent that MPU seeks a declaration that the rates charged were unjust or void, we find that the trial court lacks jurisdiction to make such a determination. We overrule MPU's issue as it relates to the trial court's jurisdiction to hear the rate challenge.

## B.    *Ultra Vires* Claims

"[W]hile governmental immunity provides broad protection to the state and its officers, it does not bar a suit against a government officer for acting outside his authority—*i.e.*, an *ultra vires* suit." *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016) (citing *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 393 (Tex.2011)). "To fall within this *ultra vires* exception," however, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009); and citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997) ("[A]n action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity

8

bars.")).

HCWID 3 asserts that the trial court properly granted its plea to the jurisdiction on MPU's *ultra vires* claims because the claims fail "as a matter of law," specifically arguing that § 11.036 is "inapplicable to the undisputed facts." *See* TEX. WATER CODE ANN. § 11.036. Section 11.036 states:

> (a) A person, association of persons, corporation, or water improvement or irrigation district having in possession and control any storm water, floodwater, or rainwater that is conserved or stored as authorized by this chapter may contract to supply the water to any person, association of persons, corporation, or water improvement or irrigation district having the right to acquire use of the water.
>
> (b) The price and terms of the contract shall be just and reasonable and without discrimination, and the contract is subject to the same revision and control as provided in this code for other water rates and charges. If the contract sets forth explicit expiration provisions, no continuation of the service obligation will be implied.
>
> (c) The terms of a contract may expressly provide that the person using the stored or conserved water is required to develop alternative or replacement supplies prior to the expiration of the contract and may further provide for enforcement of such terms by court order.
>
> (d) If any person uses the stored or conserved water without first entering into a contract with the party that conserved or stored it, the user shall pay for the use at a rate determined by the commission to be just and reasonable, subject to court review as in other cases.

*Id.* § 11.036. HCWID 3 argues that this section is inapplicable because the undisputed facts show that the water at issue here is not "storm water, floodwater, or rainwater that is conserved or stored," but rather it is water that is collected from the Rio Grande. HCWID 3 argues that, by its plain language, § 11.036 is inapplicable to the underlying facts.

In response, MPU asserts that the water provided by HCWID 3 Is "conserved or stored" water. Specifically, MPU asserts:

> Water used by permit holders downstream of Falcon Reservoir is allocated to the users based on an accounting system of water stored in Amistad and Falcon Reservoirs. [30 TEX ADMIN. CODE] § 303.21. Consequently, below the dams of those reservoirs, there effectively is no "ordinary flow" in the Rio Grande as that term is defined in Water Code Section 11.021. Necessarily, the water provided by [HCWID 3] to [MPU] therefore is "conserved or stored" water.

MPU asserts that the water that is diverted from the Rio Grande is not "run-of-river water" because "the lower portion of the Rio Grande where [HCWID 3] diverts its water effectively has no ordinary flow." MPU is essentially requesting the opportunity to present expert testimony to determine what part, if any, of the Rio Grande is considered "conserved or stored" water versus "run-of-river" water.

Here, however, the contract specifically relates to water that is pumped out of the Rio Grande, not from conserved or stored water in the Amistad or Falcon Reservoirs. There is no dispute that HCWID 3 pumps the water directly from the Rio Grande. We are not persuaded by MPU's attempt to classify water taken directly from the Rio Grande as stored or conserved water simply because some portion of the water may come from other sources. As such, we find that § 11.036 is inapplicable to the facts of this case. Accordingly, an *ultra vires* claim asserting that the Board members exceeded their authority under § 11.036 fails as a matter of law. We overrule MPU's issue as it pertains to the *ultra vires* claims.[2]

---

[2] Having determined that Texas Water Code § 11.036 is inapplicable to the facts of this case, conclude the trial court lacked jurisdiction to the extent that MPU sought a declaration that the delivery charges that were not on the same percentage basis as HCWID 3's other customers "are void because they were established in violation of Texas Water Code [§] 11.036."

10

## C.      Senate Bill 2185

MPU's petition also sought a declaration that appellees "in their respective official capacities" have violated the "statutory requirements enacted by the Texas Legislature in 2021 through Senate Bill 2185." *See* Act of May 31, 2021, 87th R.S., ch. 1022, § 6, 2021 Tex. Gen. Laws 2705, 2706 (stating in part that HCWID 3 "shall establish and post on [its] Internet website a database of district check register reports, including district expenditures and contracts"). In their plea to the jurisdiction, appellees challenged MPU's standing to bring such a claim, stating that the provisions in Senate Bill 2185 have nothing to do with MPU's challenge to the rates at issue, and that MPU failed to show it suffered any injury or harm because of HCWID 3's alleged failure to comply with Senate Bill 2185.

"To maintain standing, a plaintiff must show: (1) an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021). In determining whether a plaintiff has alleged a concrete injury sufficient to meet the standing requirement, courts look to the plaintiff's pleadings. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (citation omitted) ("A review of only the pleadings to determine subject matter jurisdiction is sufficient in the trial court because a litigant has a right to amend to attempt to cure pleading defects if jurisdictional facts are not alleged. Failing that, the suit is dismissed.").

MPU asserts that HCWID 3's "obstinate refusal to comply with the clear and specific requirements of [Senate Bill] 2185 directly injures MPU because MPU continues to have no access to public records."

> Further, [HCWID 3's] failure to comply with Senate Bill 2185, as pleaded, has allowed [HCWID 3] to continue charging an unjust, unlawful, and unreasonable rate to MPU. [HCWID 3's] continued operations in secrecy and flagrant violation of the law is logically and directly traceable to the injury sustained by MPU—payment of an unjust, unreasonable, and discriminatory price for water it is entitled to.

MPU's general assertion that the alleged non-compliance with Senate Bill 2185 "logically and directly" injured MPU is not sufficient to establish a concrete and particularized injury. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7–8 (Tex. 2021) (stating that an injury is not concrete if it is merely a "generalized grievance" shared by the public at large). MPU fails to connect the dots between the alleged failure to comply with Senate Bill 2185 and an actual, concrete injury sustained by MPU. MPU's allegations that HCWID 3's failure to post publicly the rates charged has caused MPU to pay more than what is reasonable amounts "only to a generalized grievance" rather than establishing a concrete injury. *See id.* at 15. Accordingly, we overrule MPU's issue as it pertains to its claim alleging HCWID 3 failed to comply with Senate Bill 2185.

### III. CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Delivered and filed on the
30th day of August, 2024.