# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00322-CV

---

**Oncor Electric Delivery Company LLC and the Public Utility Commission of Texas, Appellants**

**v.**

**Giovanni Homes Corporation, Appellee**

---

### FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-007049, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellants Oncor Electric Delivery Company LLC and the Public Utility Commission of Texas (PUC or Commission) challenge the trial court's final judgment reversing the PUC's July 19, 2019 Order ("Final Order"), which resolved a complaint filed by appellee Giovanni Homes Corporation against Oncor. The trial court concluded that the Final Order "exceeds the Commission's statutory authority and violates Giovanni Homes Corporation's right to a jury trial pursuant to Article I, Section 15 of the Texas Constitution." In two issues, Oncor and the Commission each argue that the trial court erred by (1) concluding that the Commission exceeded its statutory authority because the Commission properly determined its jurisdiction over Giovanni's claims against Oncor and (2) concluding that the Final Order violates Giovanni's constitutional right to trial by jury. In their third issue, they argue that the trial court erred by reversing the Final Order because the Final Order is supported by substantial evidence. For the

reasons explained below, we reverse the trial court's judgment, and we render judgment affirming the Commission's Final Order.

## BACKGROUND[1]

**Factual background**

Giovanni, a now-defunct custom homebuilder in the Tarrant County area, bought platted but undeveloped lots in the Waterchase development in 2004 to develop them. Giovanni contacted Oncor in early 2006 about providing electricity for three townhomes it had built on its lots and for other planned residences. Oncor is a transmission-and-distribution utility (TDU) regulated by the PUC; it serves the City of Fort Worth, among other Texas cities.[2] *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018). As a TDU, Oncor's tariff governs its retail rates, services, and operations. *Id.* at 142 ("As a PUC-regulated utility, Oncor is required to file a tariff with the PUC describing its rates, operations, and services." (citing Tex. Util. Code § 32.101(a))). "Once the PUC approves the tariff, Oncor must comply with [its] requirements and apply its rates and provide its services uniformly to all of its retail customers."[3] *Id.*

---

[1] The facts in this background section include undisputed facts from the parties' briefs (except where a dispute is noted) and unchallenged findings of fact from the Commission's Final Order.

[2] Oncor is the largest TDU in Texas and the sixth largest in the United States, serving over 7 million consumers in 401 cities and 91 counties. *Oncor Elec. Delivery Co. v. Public Util. Comm'n of Tex.*, 507 S.W.3d 706, 709-10 (Tex. 2017).

[3] The Commission requires all TDUs to use a "Pro-forma Retail Delivery Tariff" that it promulgates by rule. 16 Tex. Admin. Code § 25.214(c), (d) (pro-forma tariff) (Pub. Util. Comm'n, Terms and Conditions of Retail Delivery Serv. Provided by Investor Owned TDUs) (2015). "TDUs may add to or modify only Chapters 2 and 6 of this tariff, reflecting individual utility characteristics and rates, in accordance with commission rules and procedures to change a tariff . . . ." *Id.* § 25.214(c). For convenience, the Court cites to the current version of the

After Giovanni requested electric service to the three constructed townhomes, Giovanni and Oncor discussed the additional service Giovanni would need for its planned development of other residences. Oncor first issued a work authorization request on May 24, 2006, to install electric-delivery facilities. As Giovanni continued to modify its proposed layout for the residential lots, Oncor redesigned the facilities needed to serve those lots. In April 2007, Giovanni began discussing with Oncor how Oncor could also serve a planned commercial building. In July 2007, Oncor determined that a new single-phase distribution line would need to be constructed to serve Giovanni's lots.

In addition, after Giovanni discovered an underground line on its property on April 27, 2007, it requested the relocation of the underground three-phase line and a pad-mounted three-phase transformer that Oncor had placed outside the platted utility easement years before Giovanni had purchased the lots.[4] Because the relocation involved moving the line and transformer to neighboring property, additional easements were necessary, and Giovanni agreed to obtain them. After Giovanni provided Oncor with the final executed easement in December 2007, Oncor completed, approved, and packaged the relocation design from January to March 2008.

In March 2008, when Oncor was about a week away from completing the planned relocation of the three-phase line and transformer, a representative of the neighboring property

Administrative Code where there has been no relevant substantive change since the events that led to Giovanni's suit.

The versions of Oncor's tariff relevant to Giovanni's breach-of-contract claim are the 2003 and 2006 versions, which, respectively, were in effect when Giovanni requested the Out-of-Easement Facilities' relocation and the Single-Phase Line's installation described later in this background section. The tariffs were introduced into evidence at the administrative hearing. For simplicity, we refer to them as "Oncor's tariff" unless it is necessary to distinguish them.

[4] No one disputes that the line was located outside of the platted utility easement at the direction of a previous owner or that it supplied electricity to two neighboring properties.

owner informed Oncor that the property owner's signature on the easement for his parking lot was forged and raised other concerns about locating the transformer in the parking lot. As a result, Oncor stopped its construction work on the relocation of the three-phase line and transformer. The delay also affected Oncor's construction work on the single-phase line, which was to be routed onto the same property owner's property. An April 2008 major storm then affected the availability of Oncor's crews to work on the single-phase line. In May 2008, the neighboring property owner objected to the line running through trees on his property, which required Oncor to do a limited redesign of the single-phase line.

Oncor finished installing the single-phase line on June 26, 2008, and the line was available to serve the three constructed townhomes and Giovanni's other lots. Due to the delay from the necessity of working with the neighboring property owners on the relocation and delays from major storms, including two hurricanes, in Oncor's service area in the period between April 2008 through September 2008, and the accompanying backlog of non-safety-related work, Oncor did not complete the relocation of the three-phase line and transformer until February 2009.

**Trial in Tarrant County District Court**

In September 2008, Giovanni sued Oncor in Tarrant County District Court, alleging claims arising from the parties' interactions in 2007 and 2008. Giovanni initially alleged claims for trespass, negligence, and conspiracy, and it later added a claim for breach of contract. By the time the case went to trial in December 2010, Giovanni's only remaining claims against Oncor were for trespass and breach of contract. Giovanni alleged that (1) the out-of-easement transformer and underground three-phase electric line on its property (the "Out-of-Easement Facilities") used to serve neighboring properties constituted a trespass and (2) a July 23, 2007 letter

4

(Letter) sent by Oncor about those facilities' relocation and the installation of a new underground single-phase electric line (the "Single-Phase Line") in a new utility easement to serve Giovanni's property constituted a contract that Oncor breached by failing to timely relocate the Out-of-Easement Facilities and install the Single-Phase Line.[5] The Letter states:

> Oncor Electric Delivery intends to reroute the existing underground primary cable currently installed through the lot in question into a new easement along the private drive to be provided by Giovanni Homes. The relocation will reconnect the existing service necessary to provide service to the existing customers along with serving the new proposed development.

The jury found that (1) Oncor trespassed, (2) the Letter constituted a contract, and (3) Oncor breached the contract by not timely (a) relocating the Out-of-Easement Facilities and (b) installing the Single-Phase Line. The jury awarded over $1,000,0000 in damages to Giovanni on the contract claim, including $189,611 for construction-loan interest payments, and attorneys' fees. It awarded $60,000 in damages on the trespass claim to Giovanni. Because the damages awarded for the contract breach greatly exceeded those awarded for the trespass, Giovanni elected to recover on its breach-of-contract claim.

Oncor sought a judgment notwithstanding the verdict (JNOV), which the trial court denied except as to the construction-loan interest payments. After the construction-loan interest payments were subtracted out, the trial court rendered judgment in favor of Giovanni under its breach-of-contract theory, awarding it $949,061, as well as prejudgment and postjudgment interest, attorneys' fees, and costs. Oncor filed an appeal, and Giovanni filed a cross-appeal.

---

[5] Giovanni disputes the Commission's findings that Giovanni requested that Oncor prepare the Letter to resolve a concern that the City of Fort Worth had with the relocation of the three-phase line.

**Appeal in the Fort Worth Court of Appeals**

On appeal, the Fort Worth Court of Appeals held that Giovanni's breach-of-contract claim was within the Commission's or the City of Fort Worth's exclusive jurisdiction under the Public Utility Regulatory Act ("PURA"), Tex. Util. Code §§ 11.001-66.016. *See Oncor Elec. Delivery Co. v. Giovanni Homes Corp.*, 438 S.W.3d 644, 660 (Tex. App.—Fort Worth 2014, pet. denied). After discovering a potential jurisdictional issue, the Fort Worth Court requested supplemental briefing from the parties to address whether the Commission had exclusive jurisdiction over Giovanni's breach-of-contract claim and to explain the role of Oncor's tariff and the filed-rate doctrine. *Id.* at 647 & n.5 (explaining that municipality has exclusive original jurisdiction over the rates, operations, and services of an electric utility when that municipality has not surrendered its jurisdiction to Commission, and Commission then has exclusive appellate jurisdiction to review the municipality's order (citing Tex. Util. Code §§ 32.001(b), .002, 33.001(a))).

The court analyzed the relevant general and specific provisions of PURA, including Section 32.101's requirement that an electric utility shall file with the Commission a tariff showing (a) each rate that is subject to the Commission's original or appellate jurisdiction and in effect for a utility service, product, or commodity offered by the utility, and (b) as part of the tariff, each rule that relates to or affects a rate of the utility or a utility service, product, or commodity furnished by it. *Id.* at 652. Thus, the court summarized, "under the utilities code, the provision of *any* service by Oncor is governed by its tariff." *Id.* "The tariff is filed with and approved by the PUC, which adopts 'just and reasonable standards, classifications, rules, or practices an electric utility must follow in furnishing a service.'" *Id.* (quoting Tex. Util. Code § 38.002(1)). The court noted that

6

"[m]aintaining the uniformity of rates and services is essential to the PURA's regulatory scheme." *Id.* (citing Tex. Util. Code §§ 36.002, .004(a)).

The Fort Worth Court also analyzed the Commission's applicable rules and the terms of Oncor's tariff. *Id.* at 652-55. The court concluded that

> The PURA sets out a comprehensive regulatory scheme, with broad and inclusive definitions of "rates" and "services" and a requirement that every rate or service provided by an electric utility be furnished and filed in a tariff. In compliance with the PURA, the PUC's administrative rules set out time limits for the kinds of services Giovanni Homes sought from Oncor and a complaint process. Oncor's Tariff is also comprehensive, and Giovanni Homes, a retail customer under the Tariff, sought relocation of one electric utility line and installation of another, both of which fall under the Tariff's definitions of "Construction Services" and "Service Agreement." The work request authorizations that correspond to Giovanni Homes's requested services follow the Tariff's requirements, as do the easements Giovanni Homes claims were consideration, which it was required to obtain under the Tariff.
>
> When claims pertain to "services" and "rates" under the PURA, the PUC has exclusive original jurisdiction. To hold otherwise would contradict the PURA's standardization and nondiscrimination purposes and the point of having a tariff. Therefore, we conclude that the PUC had exclusive jurisdiction over Giovanni Homes's contract claim.

*Id.* at 657 (citations omitted). Consequently, the Fort Worth Court reversed the trial court's judgment and remanded the case to the trial court with instructions to abate it to give Giovanni a reasonable opportunity to exhaust its administrative remedies. *Id.* at 661.

**Giovanni's Administrative Proceedings**

Giovanni filed a complaint with the City of Fort Worth because the City of Fort Worth retains original jurisdiction over electric utilities within its corporate limits, and Giovanni's property is located within those limits. After the City dismissed the complaint, Giovanni appealed the dismissal to the PUC by filing a complaint with it. After the Commission issued a preliminary

7

order specifying the issues to be and not to be addressed in the proceeding, the Commission referred the matter to the State Office of Administrative Hearings (SOAH). The issues that the Commission specified must be addressed related to what services Giovanni requested from Oncor; the application of PURA, Commission rules, and Oncor's tariff to those services; and the appropriate remedies for violations, if any, by Oncor. The Commission acknowledged that it lacked legislative authority to "resolve contractual disputes" or "preside over tort actions." The issues that the Commission specified were not to be addressed included issues related to any tortious interference with a contract by Oncor, any trespass by Oncor, tortious malice or gross negligence by Oncor, and appropriate damages under tort law or attorneys' fees and court costs. An administrative law judge (ALJ) conducted a hearing on the merits, and on April 22, 2019, issued a proposal for decision (PFD) that denied Giovanni's complaint. The ALJ found that Oncor did not violate PURA, Commission rules, or Oncor's tariff. The PFD also addressed Giovanni's breach-of-contract claims.

The Commission issued its Final Order on July 18, 2019, adopting most of the ALJ's findings of fact and conclusions of law, with a few exceptions. Those exceptions include conclusions related to the following areas:

1) <u>Payment of Costs</u>: The Commission determined that neither Giovanni nor Oncor complied with the tariff with regard to relocating the Out-of-Easement Facilities—"Giovanni did not pay the required relocation costs, and Oncor relocated the facilities without requiring payment, thereby favoring Giovanni as a customer." Thus, the Commission deleted the conclusion of law that Oncor did not violate its tariff and added conclusions of law regarding the violations by Giovanni and Oncor.

2) <u>Requests for Service</u>: The Commission determined that Giovanni did not comply with the tariff in how it made its requests for relocating the Out-of-Easement Facilities and installing the Single-Phase Line, and that Oncor did not insist on compliance with the formal tariff provisions relating to requests

8

for service but moved forward in trying to assist Giovanni. The Commission noted that "compliance with the tariff forestalls these types of disputes." It further noted that "Giovanni's and Oncor's violations with respect to the requests for construction service do not vitiate the requests. Giovanni requested construction services, and Oncor provided them under its tariff." It added conclusions of law related to the requests.

3) Limitation-of-Liability Provision of the Tariff: Because the Commission had added language to the pro forma tariff (which every TDU like Oncor is required to adopt) to clarify that the limitation-of-liability provision applies to construction services, it added a conclusion of law to reflect this previous determination. However, it did not otherwise deviate from the PFD's recommendation not to address the tariff's limitation-of-liability provision in this proceeding.

The Commission also declined to adopt the parts of the PFD that discuss contract formation or breach of contract with regard to an alleged contract between Giovanni and Oncor, and it addressed its own exclusive jurisdiction.

In addressing its exclusive jurisdiction, the Commission harmonized the Fort Worth Court of Appeals' *Giovanni* opinion and the Texas Supreme Court's subsequent opinion, *Oncor Electric Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133 (Tex. 2018), which had been decided while Giovanni's appeal was being heard at SOAH. In *Chaparral*, the Texas Supreme Court discussed both the *Giovanni* opinion, noting its holding that the PUC had exclusive jurisdiction over Giovanni's breach-of-contract claim because it was a claim pertaining to service and rates under PURA, *id.* at 140 (citing *Giovanni*, 438 S.W.3d at 657), and another court of appeals' opinion, *City of Houston v. CenterPoint Energy Houston Electric, LLC*, No. 01-11-00885-CV, 2012 WL 6644982 (Tex. App.—Houston [1st Dist.] Dec. 20, 2012, no pet.) (mem. op.). It noted (1) the holding in the *Giovanni* opinion that the PUC had exclusive jurisdiction over Giovanni's breach-of-contract claim because it was a claim pertaining to service and rates under PURA, *Chaparral*, 546 S.W.3d at 140 (citing *Giovanni*, 438 S.W.3d at 657), and (2) the holding

9

in *City of Houston* that the PUC had exclusive jurisdiction over the City's breach-of-contract claim for overcharge of streetlight services because the PUC "had the authority to approve the Tariff, and it is a natural extension of that authority for the agency to decide, as a regulatory matter, a dispute arising from the Tariff," *id.* at 140 (quoting *City of Houston*, 2012 WL 6644982 at \*7). The Texas Supreme Court approved of these holdings: "We agree with these courts' construction and application of the scope of PURA's grant of exclusive jurisdiction to the PUC." *Id.* The court further held that "[i]n light of section 32.001(a)'s express language and the comprehensive regulatory scheme PURA creates, we conclude that PURA grants the PUC exclusive jurisdiction over all matters involving an electric utility's rates, operations, and services." *Id.* at 141. Consequently, the court concluded, "[a]lthough the heart of this case is a simple contract dispute, it necessarily involves questions of rules and regulations squarely within the PUC's purview. PURA therefore requires that parties first take their disputes to the administrative agency with the proficiency necessary to make the preliminary determinations." *Id.* at 145 (holding that PUC has exclusive jurisdiction to resolve regulatory issues underlying Chaparral's claim that Oncor breached contract by failing to timely provide electric services).

The court also addressed Chaparral's argument that the inadequate-remedy exception to the exhaustion-of-remedies requirement should apply to prevent the Commission from exercising its exclusive jurisdiction over the case. *Id.* at 141-43. The court concluded that "the inadequate-remedy exception does not apply in this case because PURA does not prevent Chaparral from obtaining the damages it seeks in the district court *after* the PUC has exercised its exclusive jurisdiction." *Id.* at 141-42. The court explained that the "hybrid claims-resolution process," a two-step process described in *David McDavid Nissan*, applies in this situation. *Id.* at 142 (citing *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221, 224 (Tex.

10

2002)).  In those instances in which the statutory scheme necessitates "that an administrative agency with exclusive jurisdiction make certain findings before a trial court may finally adjudicate a claim," "the agency must first exercise its exclusive jurisdiction and apply its unique expertise to resolve the issues that fall within its exclusive jurisdiction."  *Id.*  Thus, as a first step, "the claimant must first 'exhaust administrative remedies to obtain [the agency's] decision' on those issues" before taking the second step of "filing suit to obtain relief the agency cannot provide."  *Id.* (quoting *David McDavid Nissan*, 84 S.W.3d at 224).  The agency's decision is subject to substantial-evidence review in the courts before it becomes final for purpose of the claimant's pursuit of damages in the trial court.  *Id.*; *see also David McDavid Nissan*, 84 S.W.3d at 224.  After the agency's decision is final, "the claimant may rely on [the agency's] findings to establish its claim and obtain relief in the courts."  *Chaparral*, 546 S.W.3d at 142.

The court held that the same two-step process should apply to the resolution of Chaparral's breach-of-contract claim, which required considering and construing Oncor's PUC-approved tariff.  *Id.* at 142-43.  The court concluded that Chaparral had not demonstrated the irreparable harm required to apply the inadequate-remedy exception.  *Id.* at 143.  Thus, the court held that "[o]nce the PUC has exercised its jurisdiction and resolved these [tariff-based] issues, Chaparral may seek damages in the trial court based on the PUC's findings."  *Id.*

In harmonizing *Giovanni* and *Chaparral*, the Commission determined in the Final Order that despite the Fort Worth Court's statement in *Giovanni* that "the Commission has exclusive jurisdiction over breach-of-contract claims, based on the totality of [the *Giovanni*] opinion and the Texas Supreme Court's decision in *Chaparral*, the Commission finds it does not have the authority to make common-law determinations regarding contracts."  Even though the complaint was first presented to a civil court as a suit on contract, "[c]omplaints regarding matters

11

within this exclusive regulatory framework [of PURA] must be presented to the Commission to be resolved as a regulatory matter." The Commission makes only "regulatory determinations regarding whether a utility violated PURA, Commission rules and tariffs." After the Commission issues its final order, "its regulatory determinations might inform a court on aspects of claims within the court's jurisdiction, such as contract formation or breach of contract." In this particular case, the Commission concluded that although it "has jurisdiction over Giovanni's claim because the tariff, which the Commission approved, governs the provision of electric utility service," "it is for the courts to decide whether the alleged contract in this tariff case was a legally binding contract." The Commission concluded that "[t]his reading of the case law gives meaning to the Texas Supreme Court's statement in *Chaparral* that '[t]he ultimate questions of breach of contract and of damages remain within the jury's province.'" *Id.* at 145. Thus, the Commission did not adopt the ALJ's findings and conclusions relating to the question of whether the Letter constituted a binding contract and if so, whether the filed-rate doctrine precluded the parties from entering into such a contract.

In its Final Order, the Commission concluded that it has jurisdiction over this matter under the following PURA Sections:

- 14.001 (granting Commission general power to regulate and supervise each public utility's business);

- 14.051 (delineating Commission's procedural powers);

- 15.051 (allowing "[a]n affected person" to complain to Commission about public utility's acts or omissions in violation of law Commission has jurisdiction to administer);

- 17.157 (establishing that Commission "may resolve disputes between a retail customer and . . . electric utility);

12

- 31.001(b) (establishing that "[p]ublic agencies regulate electric utility rates, operations, and services, except as otherwise provided by this subtitle);

- 32.001 (establishing Commission's "exclusive original jurisdiction over the rates, operations, and services of an electric utility" and its "exclusive appellate jurisdiction to review an order or ordinance of a municipality exercising exclusive original jurisdiction under this subtitle"); and

- 32.101 (establishing that electric utilities "shall file with each regulatory authority a tariff showing each rate that is: (1) subject to the regulatory authority's original or appellate jurisdiction; and (2) in effect for a utility service, product, or commodity offered by the utility").

The Commission noted three key findings made by the Fort Worth Court of Appeals in *Giovanni*, which the Commission explained it was also making "expressly as the Commission's own findings and conclusion of law under its exclusive jurisdiction":

(1)     Oncor's tariff applies to this complaint;

(2)     Giovanni was a retail customer of Oncor under the tariff with respect to construction services; and

(3)     the relocation of the three-phase line and the installation of the single-phase line fall under the tariff's definition of *construction services*.

(Formatting altered.)

Giovanni timely moved for rehearing in the Commission proceeding. Giovanni contended that the Commission improperly determined that it had jurisdiction over this private contract matter and that many of the Final Order's findings of fact and conclusions of law were erroneous or unsupported by the evidence. In particular, Giovanni argued that because the Commission's conclusions of law that Giovanni was a retail customer as defined by Oncor's tariff and that Oncor's tariff applied to the relocation of the Out-of-Easement Facilities were erroneous, so were its conclusions of law that (1) the Commission had exclusive jurisdiction over any issues

13

underlying Giovanni's breach-of-contract claim, (2) Giovanni did not comply with Oncor's tariff with regard to the Out-of-Easement Facilities' relocation, (3) Giovanni's requests for "Construction Services" were improper informal ones, and (4) Oncor's tariff applied to Giovanni's breach-of-contract claim. Giovanni's motion for rehearing did not assert that the PUC violated Giovanni's right to trial by jury, although it did argue that PURA does not allow the Commission to award money damages for breach of contract. Giovanni's motion for rehearing was overruled by operation of law.

Giovanni timely appealed the Commission's Final Order to Travis County District Court. The trial court reversed the Commission's decision and rendered judgment in favor of Giovanni. In its judgment, the trial court found that the Commission's Final Order "exceeds the Commission's statutory authority and violates Giovanni Homes Corporation's right to a jury trial pursuant to Article I, Section 15 of the Texas Constitution." Oncor and the Commission appeal from that judgment.

## STANDARD OF REVIEW

**Statutory Construction**

Whether an agency has exclusive jurisdiction presents a question of statutory interpretation that we review de novo. *Chaparral*, 546 S.W.3d at 138. To overcome the presumption that a district court has jurisdiction to resolve a dispute, "the Constitution or another law must grant exclusive jurisdiction to another court or an administrative agency." *Id.* "A statute may grant an agency exclusive jurisdiction either expressly or by establishing a 'pervasive regulatory scheme' that impliedly 'indicates that the Legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed.'"

14

*CPS Energy v. Electric Reliability Council of Tex.*, 671 S.W.3d 605, 617 (Tex. 2023) (quoting *Chaparral*, 546 S.W.3d at 138). The statutory language is determinative when deciding whether a "pervasive regulatory scheme" exists. *Chaparral*, 546 S.W.3d at 138. "When an agency has exclusive jurisdiction, courts lack jurisdiction until the party has exhausted all administrative remedies before the agency." *Id.*

We also review de novo the question of whether the Commission's assumption of jurisdiction violates Giovanni's constitutional right to a jury trial. *In re M.G.N.*, 441 S.W.3d 246, 248 (Tex. 2014) (per curiam). ("The construction of the constitution and statutes are questions of law we review de novo.").

**Substantial Evidence**

We review whether the Commission's Final Order is supported by substantial evidence under the substantial-evidence standard. Tex. Util. Code § 15.001 ("Any party to a proceeding before the commission is entitled to judicial review under the substantial evidence rule."). The substantial-evidence standard "is largely deferential to the Commission's decision," as established in Texas Government Code Section 2001.174. *Reliant Energy, Inc. v. PUC*, 153 S.W.3d 174, 184 (Tex. App.—Austin 2004, pet. denied).

When conducting a substantial-evidence review, courts presume the agency's decision is supported by substantial evidence, and the plaintiff has the burden to overcome this presumption. *Nucor Steel v. Public Util. Comm'n of Texas*, 168 S.W.3d 260, 267 (Tex. App.—Austin 2005, no pet.). "'Substantial evidence' does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact." *Reliant Energy*, 153 S.W.3d at 184. Courts must uphold the agency's

15

decision if "some reasonable basis exists in the record for the action taken by the agency." *City of El Paso v. Public Util. Comm'n of Tex.*, 883 S.W.2d 179, 185 (Tex. 1994).

"We must uphold an agency's finding even if the evidence actually preponderates against the agency's finding so long as enough evidence suggests the agency's determination was within the bounds of reasonableness." *Reliant Energy*, 153 S.W.3d at 184; *accord Nucor Steel*, 168 S.W.3d at 267. "The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency." *City of El Paso*, 883 S.W.2d at 185. "At its core, the substantial evidence rule is a reasonableness test or a rational basis test." *Id.*

## ANALYSIS

Oncor and the Commission each raise three issues on appeal. Their issues are similar but approached from different perspectives. Oncor and the Commission both assert that (1) the Commission properly exercised its exclusive jurisdiction over the matters determined in its Final Order, (2) the Final Order does not deprive Giovanni of its right to a jury trial, and (3) the Final Order is supported by substantial evidence. We turn first to the issue of whether the trial court erroneously concluded that the Commission exceeded its statutory authority.

## I.     The Commission did not exceed its statutory authority.

Both Oncor and the Commission argue in their first issue that the trial court erred by concluding that the Commission exceeded its statutory authority because the Commission

properly determined its jurisdiction over Giovanni's claims against Oncor.[6] To establish that the Commission has "exclusive jurisdiction over a particular issue, there must be (1) an express or implied grant of exclusive jurisdiction and (2) the issue must 'fall[ ] within that jurisdictional scope.'" *CPS Energy*, 671 S.W.3d at 617. Oncor and the Commission contend that the issues underlying Giovanni's breach-of-contract claim that the Commission decided in the Final Order fall within the Commission's jurisdictional scope.

Oncor argues that the Commission has exclusive jurisdiction over the issues underlying Giovanni's breach-of-contract claim because (1) Giovanni is an "affected party," as defined by PURA, and thus entitled to bring a complaint before the Commission; and (2) the Commission regulates the services Giovanni sought from Oncor because the services are governed by specific provisions of Oncor's tariff. The Commission focuses on its contentions that it correctly determined that (1) the services Giovanni requested from Oncor were "Construction Services," as that term is defined in Oncor's tariff, and (2) the definition of a "Retail Customer" under Oncor's tariff also includes property owners, builders, developers, and contractors, like Giovanni.

Although Giovanni acknowledges that PURA affords the Commission "exclusive original jurisdiction over the rates, operations, and services of an electric utility," Tex. Util. Code § 32.001, and through its creation of a "pervasive regulatory scheme," *Chaparral*, 546 S.W.3d at 139 (quoting *In re Entergy Corp.*, 142 S.W.3d 316, 323 (Tex. 2004) (orig. proceeding)), it maintains that it was neither an "affected person" nor a "retail customer." It advocates for a narrow

---

[6] The Commission's second issue presented is "[d]id the Commission reasonably read and apply the plain language in Oncor's tariff?" However, the Commission addresses that issue in the section of the brief arguing that the Commission properly decided that it had jurisdiction, so we are considering the Commission's first and second issues together.

view of its breach-of-contract claims and of the definitions of "affected person," "retail customer," and the services it sought from Oncor, contending that its claims do not involve Oncor's rates, operations, or provision of electric services to Giovanni, and therefore, the Commission never had exclusive jurisdiction over this matter. As explained below, we disagree.

**A.      Giovanni asked Oncor to provide it with "service," as defined by PURA and Oncor's tariff.**

In *Chaparral*, the Texas Supreme Court reiterated that Section 32.001's specific grant to the Commission of exclusive original jurisdiction "makes it clear that the Legislature intended [the parties'] dispute regarding utility rates, operations, and services to begin its journey toward resolution at the PUC." *Id.* (quoting *In re Entergy*, 142 S.W.3d at 323). PURA gives the Commission "broad powers to 'regulate and supervise the business of each public utility within its jurisdiction and to do anything specifically designated or implied by [PURA] that is necessary and convenient to the exercise of that power and jurisdiction.'" *Id.* at 138 (quoting Tex. Util. Code § 14.001). PURA's express purpose "is to establish a comprehensive and adequate regulatory system for public utilities to assure rates, operations, or services that are just and reasonable to the consumers and to the utilities" and "to grant the [Commission] authority to make and enforce rules necessary to protect customers of telecommunications and electric services consistent with the public interest." Tex. Util. Code § 11.002(a), (c) (governing all utilities). PURA repeats this purpose in Subtitle B, which governs electric utilities like Oncor. *Id.* § 31.001(a). PURA also expressly provides that it "shall be construed liberally to promote the effectiveness and efficiency of regulation of public utilities." *Id.* § 11.008. Here, similarly to *Chaparral*, while PURA undoubtedly grants the Commission exclusive jurisdiction over the rates, operations, and services

18

of an electric utility both expressly and by creating a pervasive regulatory scheme, we nevertheless must determine whether Giovanni's claim falls within that jurisdictional scope. 546 S.W.3d at 139.

Also similarly to *Chaparral*, Oncor's agreement to provide services is central to our resolution of this question. If the services that Giovanni alleges in its breach-of-contract claim that Oncor failed to timely provide are services governed by PURA and Oncor's tariff, that conclusion informs whether Giovanni is an "affected person" and a "retail customer" under PURA and Oncor's tariff. In addition, as Oncor points out, the Commission has exclusive jurisdiction only over issues involving an electric utility's rates, operations, or services that it regulates pursuant to a specific PURA provision, Commission regulation, or provision in an approved tariff. *Compare Chaparral*, 546 S.W.3d at 142 (holding that PUC had exclusive jurisdiction over issues underlying breach-of-contract claim because claim could not "be resolved without considering and construing Oncor's PUC-approved tariff"), *with In re CenterPoint Energy Houston Elec., LLC*, 629 S.W.3d 149, 162 (Tex. 2021) (orig. proceeding) (plurality op.) (holding that PUC lacked exclusive jurisdiction in wrongful-death and survival action over standard of care in tort suit when no PURA provision, PUC regulation, or tariff provision specifically dealt with fuse sizes on distribution lines and thus did not displace common-law standard of care).[7] The Texas Supreme

---

[7] Plurality opinions of the Texas Supreme Court do not constitute binding precedent but may be cited as persuasive authority. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). In *In re CenterPoint Energy Houston Elec., LLC*, 629 S.W.3d 149, 166 (Tex. 2021) (orig. proceeding) (Boyd J., concurring), a fifth justice agreed with the Texas Supreme Court's disposition and its conclusion that "plaintiffs here are not the 'kind of "affected person" who may bring a claim to the Commission' and have not brought 'the kind of claim that the Commission can adjudicate,' at least under the Court's reasoning in *Oncor*." The plurality in *In re CenterPoint* had concluded that the plaintiffs were "not persons whose service or rates would be affected by a proceeding." *Id.* at 159 (citing *In re Oncor Elec. Delivery Co.*, 630 S.W.3d 40, 46 (Tex. 2021) (orig. proceeding); *see also In re Oncor*, 630 S.W.3d at 49 (concluding that plaintiff's personal-injury "suit alleging inaction and representations about tree-trimming does not complain about his

Court emphasized in another 2021 case examining the Commission's exclusive jurisdiction that the breach-of-contract claim at issue in *Chapparal* came within the Commission's exclusive jurisdiction because "the dispute centered on the utility's failure to timely provide electrical service—that is, the very activity the Commission regulates," and the plaintiff "sought regulatory enforcement of the utility's tariff" through its suit. *In re Oncor Elec. Delivery Co.*, 630 S.W.3d 40, 49 (Tex. 2021) (orig. proceeding).

Thus, we examine whether the services Giovanni requested from Oncor are services governed by PURA and Oncor's tariff to determine whether Giovanni's claims are within the Commission's exclusive jurisdiction.

### 1. The services requested by Giovanni satisfy PURA's definition of "service."

PURA expressly defines the term "service" to have its "broadest and most inclusive meaning. The term includes any act performed, anything supplied, and any facilities used or supplied by a public utility in the performance of the utility's duties under this title to its patrons . . . and the public."[8] Tex. Util. Code § 11.003(19). Both the Out-of-Easement Facilities' relocation and the Single-Phase Line's installation fit this definition—they are acts to be performed and "facilities used or supplied" by Oncor for its patrons, the Oncor customers served by the Out-of-Easement Facilities and Giovanni to be served by the Single-Phase Line.

---

electrical service or Oncor's rates" or "allege damages arising from the provision of his electrical service")).

[8] This definition of "service" is also included in the Commission's rules. 16 Tex. Admin. Code § 25.5(121) (Pub. Util. Comm'n of Tex., Definitions) (2022).

### 2. The services requested by Giovanni satisfy Oncor's tariff's definition of a "Construction Service."

A utility's operations, including provision of services, are also governed by its tariff, which PURA Section 32.101 requires that an electric utility file with the Commission, and which shows each rate that is subject to the Commission's original or appellate jurisdiction and in effect for a utility service, product, or commodity offered by the utility and each rule affecting those rates and services, products, or commodities. *Id.* § 32.101(a), (b). The Commission approves utilities' tariffs as part of its authority to "adopt just and reasonable standards, classifications, rules, or practices an electric utility must follow in furnishing a service." *Id.* § 38.002(1). Unless found to be unreasonable, a tariff filed with and approved by the Commission governs an electric utility's relationship with its customers and has the force and effect of law.[9] *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 217 (Tex. 2002); *accord CenterPoint Energy Res. Corp. v. Ramirez*, 640 S.W.3d 205, 207 (Tex. 2022).

The Commission concluded that "[t]he services Giovanni requested from Oncor were 'construction services' as that term is defined in chapter 1 of [Oncor's] tariff." Section 3.1 of Oncor's tariff governs its "applicability" and limits it to services provided to "Retail Customers." Among the services covered by the tariff is "Construction Service," which the tariff defines as "services related to the construction, extension, *installation*, modification, repair, upgrade, conversion, *relocation*, or removal of Delivery System facilities, including temporary

---

[9] "When a regulatory agency approves a tariff, courts presume, under the filed-rate doctrine, that the tariff is reasonable." *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 219 (Tex. 2002).

21

facilities."[10]  (Emphases added.)  The services that Giovanni sought from Oncor, which Giovanni alleges as the bases for its breach-of-contract claim, meet the definition of a "Construction Service" within the tariff's meaning because Giovanni sought the installation of Delivery System facilities (the Single-Phase Line) and the relocation of Delivery System facilities (the Out-of-Easement Facilities).

### 3. The Commission regulates the services sought by Giovanni from Oncor because they are governed by specific provisions in Oncor's tariff.

In addition to satisfying the definition of a "Construction Service," Giovanni's requests for the Single-Phase Line's construction and the Out-of-Easement Facilities' relocation are each governed by specific provisions of Oncor's tariff.  Oncor points out two additional provisions of Oncor's tariff that are applicable to Giovanni's service requests: Section 5.7.8, which applies to Giovanni's request for the Out-of-Easement Facilities' relocation, and Section 5.3.1.2, which governs the request for the Single-Phase Line's installation.

Section 5.7.8, titled "REMOVAL AND RELOCATION OF COMPANY'S FACILITIES AND METERS," provides as follows:

> Company may remove or relocate Company facilities . . . at Retail Customer's request unless doing so would create a safety hazard or would be incompatible with providing safe and reliable Delivery Service.  Retail Customer, or the entity requesting such removal or relocation, shall pay to Company the total cost of removing or relocating such Delivery System facilities in accordance with Chapter 6.1, RATE SCHEDULES.

---

[10]  "Delivery System" is defined in the Tariff as "[t]he electric lines, and other equipment, including transformers, owned by Company and the Meters, including Non-Company Owned Meters, used in the Delivery of Electric Power and Energy."

22

Section 5.3.1.2 of the Tariff governs the "INITIATION OF DELIVERY SYSTEM SERVICE WHERE CONSTRUCTION SERVICES ARE REQUIRED." It provides as follows:

> Where Construction Services are required prior to the initiation of Delivery System Service, Retail Customer may contact Company directly to make arrangements for such service. All such requests shall be governed by the provisions in Section 5.7, FACILITIES EXTENSION POLICY. After completion of Construction Service, Company shall initiate Delivery System Service in accordance with Section 5.3.1.1, INITIATION OF DELIVERY SYSTEM SERVICE WHERE CONSTRUCTION SERVICES ARE NOT REQUIRED.

Giovanni's breach-of-contract claim alleges that Oncor failed to timely provide the requested services, "the very activity the Commission regulates," and thus, Giovanni is seeking "regulatory enforcement of the utility's tariff" through its suit. *See In re Oncor*, 630 S.W.3d at 49.

### B. Giovanni is both a "retail customer" and an "affected person" as defined by Oncor's Tariff

"Retail Customer" is defined in Oncor's tariff as follows:

> An end-use customer who purchases Electric Power and Energy and ultimately consumes it. *Whenever used in the context of construction services*, the term Retail Customer also includes *property owners*, *builders*, *developers*, contractors, governmental entities, or any other organization, entity, or individual that is not a Competitive Retailer making a request for such services to the Company.[11]

(Emphases added.) Because Giovanni was a property owner, builder, or developer who requested construction services (i.e., relocation and installation of Delivery System facilities) from Oncor, we conclude that Giovanni was a "retail customer" as that term is defined by Oncor's tariff.

---

[11] "Electric Power and Energy" is defined in the tariff as "[t]he KWH, the rate of delivery of KWH, and ancillary services related to KWH that a Competitive Retailer provides to Retail Customers."

Similarly, we conclude that Giovanni is an "affected person," as defined by PURA. We begin with the plain language of the relevant statutorily defined terms. Under PURA Section 15.051, "[a]n affected person may complain to the regulatory authority in writing setting forth an act or omission by a public utility in violation or claimed violation of a law that the regulatory authority has jurisdiction to administer or of an order, ordinance, or rule of the regulatory authority." Tex. Util. Code § 15.051. PURA Section 11.003(1)(B) defines an "affected person" as "a person whose utility *service or rates* are affected by a *proceeding* before a regulatory authority."[12] *Id.* § 11.003(1)(B) (emphases added); *see also In re CenterPoint*, 629 S.W.3d at 159 (concluding that plaintiffs in wrongful-death and survival action were "not persons whose service or rates would be affected by a proceeding"). The term "rate" includes:

(A)   any compensation, tariff, charge, fare, toll, rental, or classification that is directly or indirectly demanded, observed, charged, or collected by a public utility for a service, product, or commodity described in the definition of utility in Section 31.002 or 51.002; and

(B)   a rule, practice, or contract affecting the compensation, tariff, charge, fare, toll, rental, or classification.[13]

*Id.* § 11.003(16). And as discussed above, the term "service," as defined by PURA, applies to Giovanni's requests from Oncor. *See id.* § 11.003(19). Giovanni's requests for the relocation of the Out-of-Easement Facilities and the installation of the Single-Phase Line were requests for acts

---

[12] "'Proceeding' means a hearing, investigation, inquiry, or other procedure for finding facts or making a decision under this title. The term includes a denial of relief or dismissal of a complaint." Tex. Util. Code § 11.003(5).

[13] Although the parties' arguments focus mostly on the definitions related to "services" in PURA and Oncor's tariff, we note that in its Final Order the Commission issued some conclusions of law interpreting tariff provisions related to the costs of providing the requested services.

performed and any facilities used or supplied by Oncor in the performance of its duties under PURA to its patrons and the public. *See id.* Similarly to the plaintiff in *Chaparral*, Giovanni's complaints arise from Oncor's alleged breach of the parties' alleged contract for Oncor to relocate the Out-of-Easement Facilities and install the Single-Phase Line for Giovanni; "[t]hus, Oncor's provision of 'services' is integral to the parties' agreement." 546 S.W.3d at 140. Giovanni is an "affected person" because its complaints about Oncor's alleged breach based on Oncor's performance of construction services requested by Giovanni "set[] forth an act or omission by a public utility in violation or claimed violation of a law that the regulatory authority has jurisdiction to administer or of an order, ordinance, or rule of the regulatory authority." Tex. Util. Code § 15.051.

Giovanni attempts to distinguish *Chaparral* by arguing that Giovanni was not a customer and that Oncor's alleged failure to timely relocate the Out-of-Easement Facilities has nothing to do with rates or service provided to Giovanni because the Out-of-Easement Facilities were not serving any of Giovanni's properties. As an initial matter, we have already concluded that Giovanni was a "retail customer" of Oncor, as defined by the tariff; the Out-of-Easement Facilities did not need to be serving any of Giovanni's properties to make Giovanni's request to relocate them a request for "construction services," as defined by the tariff. But Giovanni contends that this case is more like *Coleman*, which involved a claim against the utility for negligence in maintaining an electrical transformer that allegedly caused a fire and property damage. *See CenterPoint Energy Houston Elec., LLC v. Coleman*, 672 S.W.3d 745, 750 (Tex. App.—Houston [14th Dist.] 2023, no pet.). On appeal in that case, the utility challenged the trial court's subject-matter jurisdiction, arguing that Coleman was a customer and thus an "affected person" because "his utility service [would be] affected by a proceeding before the Commission." *Id.* at 758. The Fourteenth Court of Appeals concluded that Coleman's claim was not a complaint "about rates

25

charged, a failure to provide timely service, the adequacy of his service, or an interruption to his service," and thus, he was not required to first bring his claim before the Commission. *Id.* Giovanni argues that its request to Oncor to relocate the Out-of-Easement Facilities likewise is not a complaint about rates or electric service provided to Giovanni's already-constructed townhomes or its planned commercial building because it affected only Giovanni's ability to build on its property.

We do not find the comparison of Giovanni's claims to Coleman's claims persuasive. We disagree that Giovanni's request to relocate the Out-of-Easement Facilities is not a complaint about rates or electric service—it is a complaint about Oncor's alleged failure to timely provide "construction services," as defined by Oncor's tariff, as the parties allegedly agreed. Instead, as explained above, Giovanni's breach-of-contract claim is much like the claim that the Texas Supreme Court in *Chaparral* concluded was a tariff-based claim within the Commission's exclusive jurisdiction.

As for its request to Oncor to install the Single-Phase Line, Giovanni attempts to minimize that claim, contending that "the majority of its factual allegations, and its claims under 'Causes of Action,' all relate to damages stemming from Oncor's failure to timely relocate the [Out-of-Easement Facilities]." Although it concedes that it may have been an "affected person" under PURA for purposes of that claim, Giovanni contends that even if that were the case, the Commission would not have exclusive jurisdiction because Giovanni was not a "retail customer." Giovanni argues that it does not satisfy Oncor's tariff's definition of a "retail customer" because it never purchased or consumed electric services for its commercial building that was never built, and it never consumed any electric power or energy because it never requested that the Single-Phase Line be connected to the completed townhomes after Oncor finished the installation

26

of the Single-Phase Line. It contends that the second part of the definition that expands the meaning of who is considered a "retail customer" in the context of construction services nevertheless requires those added classes of people to also be end-use customers who purchase and consume electric power. Giovanni asserts that when Oncor's tariff is read as a whole, interpreting the definition in this way best conforms to the overall purpose of the tariff to govern "the services Oncor provides to customers who currently use or will use its electricity."

We disagree. Construing the definition as Giovanni suggests would render the second sentence—especially its use of the word "also"—superfluous. We do not interpret a statute (and Oncor's tariff has the force of law) in a manner that would render part of it meaningless. *See, e.g.*, *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 442 (Tex. 2009). Under Giovanni's interpretation, the tariff's addition of other classes of people in the context of construction services becomes meaningless because those people generally never become end-use customers. Thus, the second sentence of the definition that includes these other classes of people as "retail customers" under certain circumstances only has meaning if these classes of people are not required to ever become end-use customers. "Because it is possible to do so, we must construe the tariff to give effect to all of its terms so that none is rendered meaningless." *Ramirez*, 640 S.W.3d at 216 (citing *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016), for proposition that courts construe "the statute as a whole, giving effect to each provision so that none is rendered meaningless or mere surplusage," and *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003), for proposition that "we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless").

27

We conclude that Giovanni is both an "affected person," as defined by PURA, and a "retail customer," as defined by Oncor's tariff. We hold that the trial court erred by concluding that the Commission lacked exclusive jurisdiction over certain issues underlying Giovanni's breach-of-contract claim for the installation and relocation of Oncor facilities, which are "construction services" governed by specific provisions of Oncor's tariff, and thus fall within the Commission's jurisdictional scope. We sustain Oncor's and the Commission's first issue.

## II.    The trial court erred by concluding that the Commission's Final Order violates Giovanni's constitutional right to a jury trial.

As a second issue, Oncor and the Commission both challenge the trial court's determination that the Commission's Final Order violates Giovanni's constitutional right to a jury trial. *See* Tex. Const. art. I, § 15 ("The right of trial by jury shall remain inviolate."). Both Oncor and the Commission argue that (1) Giovanni waived its claim that the Commission's Final Order violates its right to a trial by jury and (2) the Texas Supreme Court expressly held in *Chaparral* and has previously held that requiring a plaintiff to exhaust its administrative remedies before suing in a trial court does not violate the right. In response, Giovanni argues that (1) it sufficiently preserved this argument and (2) because the Commission never had jurisdiction, requiring Giovanni to exhaust its administrative remedies deprived it of its constitutional right to a jury trial.

Assuming without deciding that Giovanni preserved its argument on this issue in its motion for rehearing filed with the Commission and in its merits brief filed in the judicial-review proceeding in the trial court, *see* Tex. R. App. P. 47.1, we conclude that because we have determined that the Commission properly determined its exclusive jurisdiction over this proceeding, the Texas Supreme Court's analysis of this issue in *Chaparral* controls. 546 S.W.3d at 143-45. Giovanni acknowledges that the court in *Chaparral* held that when an administrative

28

agency has exclusive jurisdiction over a proceeding, the constitutional right to a jury trial does not attach to the administrative proceeding. *See id.* at 144. Giovanni contends, however, that its case differs from *Chaparral* because Giovanni never pleaded that Oncor's tariff applied to its claims, and Giovanni reurges its arguments that Oncor's failure to timely relocate the Out-of-Easement Facilities does not trigger the tariff because it "never would impact Giovanni's rates or service . . . because those facilities provided no service to Giovanni's properties." (It does not address whether its request for installation of the Single-Phase Line would trigger the tariff.) It also contends that nothing in PURA or Oncor's tariff suggests "that the PUC has particular expertise about a utility's delays in (i) relocating trespassing lines that (ii) do not provide service to the entity requesting its relocation, (iii) will not impact the requesting entity's electric service, and (iv) will not affect the requesting entity's rates," citing *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002) (explaining that administrative agency initially should decide issue when "agency is typically staffed with experts trained in handling the complex problems in the agency's purview"). For all the reasons discussed in the prior section, we disagree. Regardless of whether Giovanni pleaded that Oncor's tariff applied to its claims, the Commission correctly determined that it has jurisdiction over those issues underlying Giovanni's breach-of-contract claims that are governed by Oncor's tariff. And regardless of whether an entity requesting the relocation of electric lines receives service from those lines, the Commission has expertise in determining whether a utility and the entity requesting relocation service have complied with the utility's tariff in connection with the request for the construction service.

In its Final Order, the Commission limited its consideration of the matters before it to those regulatory determinations presented to it about whether Oncor violated PURA, Commission rules, and tariffs," noting that it "is limited to making determinations regarding

29

applicable law, its rules, and the tariff 'as a regulatory matter.'" *See City of Houston*, 2012 WL 6644982, at \*7 (determining that "it is a natural extension of that authority [to approve a tariff] for the [PUC] to decide, as a regulatory matter, a dispute arising from the Tariff"). The Commission further explained that it "does not have jurisdiction to make—and does not make—common-law determinations. Once the Commission issues a final order, its regulatory determinations might inform a court on aspects of claims within the court's jurisdiction, such as contract formation or breach of contract." It declined to determine "whether the alleged contract in this tariff case was a legally binding contract" because that is an issue for a court to decide, not an issue "over which the Legislature has given the Commission jurisdiction."

The Commission thus sought to give effect to the Texas Supreme Court's determination in *Chaparral* that "[t]he ultimate questions of breach of contract and of damages remain within the jury's province." 546 S.W.3d at 145. The court there held that because the jury would ultimately decide those questions, "requiring the PUC to first make underlying determinations within its expertise before Chaparral can seek recourse through the judicial system does not deprive Chaparral of its right to a jury trial nor of its constitutional guarantee of open courts." *Id.* As discussed earlier, after Giovanni exhausts its administrative remedies and the Commission's order is final for the purpose of Giovanni's pursuit of damages in the trial court, Giovanni may rely on the Commission's findings "to establish its claim and obtain relief in the courts." *Id.* at 142; *see also David McDavid Nissan*, 84 S.W.3d at 224. We conclude that the Commission's Final Order therefore does not deprive Giovanni of its right to a jury trial, and we sustain Oncor's and the Commission's issue.

**III.    The Final Order is supported by substantial evidence.**

In each of their third issues, Oncor and the Commission contend that if we conclude the Commission properly exercised its exclusive jurisdiction, we may conduct a substantial-evidence review of the Commission's Final Order even though the trial court did not, and Giovanni agrees. *See Public Util. Comm'n of Tex. v. Cities of Harlingen*, 311 S.W.3d 610, 625-26 (Tex. App.—Austin 2010, no pet.) (concluding that remand to trial court for substantial-evidence review was unnecessary after reversing trial court's judgment); *see also* Tex. R. App. P. 43.3 (requiring courts of appeal to "render the judgment that the trial court should have rendered, except when: (a) a remand is necessary for further proceedings; or (b) the interests of justice require a remand for another trial"). We agree that we may conduct a substantial-evidence review because "whether substantial evidence supports an administrative agency's decision is a question of law," and therefore, even if the trial court had ruled on Giovanni's claim that substantial evidence does not support the Commission's Final Order, the trial court's "ruling would be entitled to no deference on appeal." *Cities of Harlingen*, 311 S.W.3d at 625. In addition, no evidence other than the administrative record is required. *Id.* Thus, remand is unnecessary, and accordingly, we must render the judgment that the trial court should have rendered. *Id.* at 625-26 (citing Tex. R. App. P. 43.3).

Giovanni contended in the trial court that the Commission erred in making twenty-five findings of fact (referencing Findings of Fact 36, 36(c), 36(d), 41, 42, 55-58, 77-82, 84, 86, 90-94, 97, 98) because the findings "are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole." On appeal, Oncor and the Commission assert that Giovanni's substantial-evidence complaint fails because the contested findings of fact are supported by substantial evidence.

31

The Commission's Final Order adopted most of the findings of fact in the PFD. Oncor and the Commission point to the PFD's detailed and exhaustive discussion of the underlying evidence and testimony. The ALJ also synthesized the evidence into a detailed timeline in a table attached to the PFD. The timeline explains, with reference to the evidence, how any conflicts in the evidence were resolved by the ALJ. The Commission incorporated this evidence by reference into its Final Order.

The challenged findings of fact involve the circumstances surrounding Giovanni's requests for construction services from Oncor, what Giovanni agreed to do to facilitate those services, whether Giovanni made any payments to Oncor in connection with the requested services, the circumstances surrounding the preparation of the Letter, what forms or agreements provided under the tariff were or were not executed by Giovanni, the types of agreements that the Commission has authorized Oncor to enter into, and Oncor's customary practices when working with a customer requesting electric service to a new development. In its brief to this Court, Oncor provided a table detailing the substantial evidence supporting each of the twenty-five challenged findings of fact. Our review of the record reflects that each of the challenged findings is supported by substantial evidence. To give one representative example, Giovanni challenges the Commission's finding of fact number 42: "Giovanni's withdrawal of its offer to pay for portable generators so [the neighboring property owners'] businesses would not experience an outage during relocation of the three-phase facilities delayed completion of the relocation, because Oncor needed to coordinate with those customers the timing of outages they would experience." Oncor refers the Court to testimony by Oncor's new-construction manager, Richard Hildebrand, who oversaw Giovanni's development project, and testimony by Giovanni's owner and founder, Vincent J. Piras. Piras testified that Giovanni ultimately "reneged" on those agreements to pay for

32

portable generators and the disconnection and reconnection costs, and Hildebrand testified that the withdrawal of Giovanni's offer to pay for portable generators meant that "the other customers would be without electric service for some hours. This made it more difficult to obtain clearances [to do the work] because summer and early fall are peak periods for the golf course" (which was the neighbors' business).

Giovanni, in its responsive appellate brief, fails to address the evidence that Oncor identifies as supporting each challenged finding and fails to argue that the cited evidence is insufficient to support the challenged fact findings.[14] Under the deferential standard for substantial-evidence review, we may not substitute our judgment for the agency's judgment on the weight of the evidence on questions committed to the agency's discretion. *Texas Comm'n on Env't Quality v. Maverick County*, 642 S.W.3d 537, 544 (Tex. 2022) (citing Tex. Gov't Code § 2001.174).

> The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise. Hence, if there is evidence to support either affirmative or negative findings on a specific matter, the decision of the agency must be upheld.

---

[14] On appeal, Giovanni argues that no substantial evidence supports the Commission's legal conclusions that Giovanni was either an "affected person" under PURA or a "retail customer" under Oncor's tariff. In addition, Giovanni challenges two conclusions of law that provide statements of law regarding the filed-rate doctrine, asserting that the filed-rate doctrine does not apply because Oncor's tariff does not apply to this dispute; this argument is also based on Giovanni's assertions that it is not an "affected person" or "retail customer." These arguments fail for the reasons we have addressed above. Giovanni also erroneously argues that the Commission's conclusion of law that the limitation-of-liability provision of a utility's tariff applies to construction services is improper. However, that conclusion of law merely acknowledges the Commission's rulemaking project that modified its pro-forma tariff and explicitly states that "[t]he Commission does not otherwise deviate from the [PFD's] recommendation not to address the tariff's limitation-of-liability provision in this proceeding."

*Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984) (citations omitted). Giovanni's burden is a heavy one—if the record contains some reasonable basis for the Commission's action, even a showing that the evidence preponderates against the agency's decision will not be enough to overcome it. *See, e.g., id.* at 452; *Lampasas Indep. Sch. Dist. v. Morath*, No. 03-21-00010-CV, 2025 WL 727442, at *2 (Tex. App.—Austin Mar. 7, 2025, no pet. h.) (mem. op.). In other words, we consider "whether any evidence supports the Commission's determination." *Public Util. Comm'n v. Texas Indus. Energy Consumers*, 620 S.W.3d 418, 427 (Tex. 2021). We ask "not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for it." *Northeastern Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020). Here, Giovanni has failed to satisfy its heavy burden to prove that the record lacks a reasonable basis for the Commission's decision. *See, e.g., Charter Med.-Dallas, Inc.*, 665 S.W.2d at 453 (concluding after court's review of record that substantial evidence supported challenged fact findings).

Having reviewed the record, we conclude that a reasonable basis exists in the record for the Commission's decision, and thus, the Final Order is supported by substantial evidence. *See City of El Paso,* 883 S.W.2d at 185; *Nucor Steel*, 168 S.W.3d at 267.

**CONCLUSION**

Having held that (1) the Commission properly exercised its exclusive jurisdiction over the matters determined in its Final Order, (2) the Final Order does not deprive Giovanni of its right to a jury trial, and (3) the Final Order is supported by substantial evidence, we reverse the trial court's final judgment and render judgment affirming the Commission's Final Order. After Giovanni has fully exhausted its administrative remedies and the Commission's Final Order becomes final for the purpose of Giovanni's pursuit of damages in the trial court, Giovanni may rely on the Commission's findings "to establish its claim and obtain relief in the courts." *See Chaparral*, 546 S.W.3d at 142; *see also David McDavid Nissan*, 84 S.W.3d at 224.

_____

Gisela D. Triana, Justice

Before Justices Triana, Kelly, and Crump

Reversed and Rendered

Filed:   May 30, 2025